**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

KATIN UMPIERRE GARCÍA,

    Plaintiff,

       v.                        CIVIL NO.: 22-1620 (MEL)

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**OPINION AND ORDER**

## I.   PROCEDURAL AND FACTUAL BACKGROUND

Pending before the court is Ms. Katin Umpierre García's ("Plaintiff") appeal from the decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 3. On October 11, 2018, Plaintiff filed an application for Social Security benefits, alleging that she initially became unable to work due to disability on September 19, 2017 (the "onset date"). Tr. 22. Prior to the onset date, Plaintiff's past relevant work was as a general duty nurse and secondary school teacher. Tr. 33. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. Tr. 24. Plaintiff's disability claim was denied initially on July 3, 2019, and upon subsequent reconsideration on January 24, 2020. Tr. 22.

Thereafter, Plaintiff requested a hearing which was held on October 12, 2021, before an Administrative Law Judge (the "ALJ").[1] Tr. 22. On November 26, 2021, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 34. Thereafter, Plaintiff requested

---

[1] The ALJ held a telephone hearing "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic." Tr. 22.

review of the ALJ's decision. *See* Tr. 689–90. The Appeals Council denied Plaintiff's request for

review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial

review. Tr. 1. Plaintiff sought judicial review on December 12, 2022. ECF No. 3. Both parties

have filed supporting memoranda. ECF Nos. 17, 20.

II.   LEGAL STANDARD

A. Standard of Review

Once the Commissioner has rendered a final determination on an application for

disability benefits, a district court "shall have power to enter, upon the pleadings and transcript

of the record, a judgment affirming, modifying, or reversing [that decision], with or without

remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to

determining whether the ALJ employed the proper legal standards and whether her factual

findings were founded upon sufficient evidence. Specifically, the court "must examine the record

and uphold a final decision of the Commissioner denying benefits, unless the decision is based

on a faulty legal thesis or factual error." *López-Vargas v. Comm'r of Soc. Sec.*, 518 F. Supp. 2d

333, 335 (D.P.R. 2007) (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15,

16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by

substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere

scintilla of evidence but may be somewhat less than a preponderance' of the evidence."

*Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368

F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. *See Ortiz*, 955 F.2d at 769 (citing *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." *Id.* Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Yuckert*, 482 U.S. at 140–42. If it is conclusively

determined that plaintiff is or is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). However, if the ALJ cannot conclusively determine whether a plaintiff is or is not disabled at a given step, then the analysis will proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent her from doing the type of work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functioning capacity ("RFC"). *Id*. If the ALJ concludes that plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

ALJ determines that there is work in the national economy that plaintiff can perform, then

disability benefits are denied. 20 C.F.R. § 404.1520(g).

## III.   THE ALJ'S DECISION

In the ALJ's decision dated November 26, 2021, the ALJ found that Plaintiff had met the

insured status requirements of the Social Security Act through December 31, 2021, the date last

insured. Tr. 24, 34. At step one of the sequential analysis, the ALJ found that Plaintiff had not

engaged in substantial gainful activity from the onset date of September 19, 2017, through the

date last insured. Tr. 24. At step two, the ALJ determined that Plaintiff had the following severe

impairments: "degenerative disc disease, obesity, epilepsy, as well as depressive and anxiety

disorders and after May 7, 2018[,] right eye blindness." Tr. 25. At step three, the ALJ found that

Plaintiff did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

1. Tr. 25. Next, the ALJ determined that during the relevant period:

> [Plaintiff] has the residual functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) except never climb ladders, ropes or scaffolds; occasionally
> climb ramps and stairs, balance, stoop, crouch, kneel or crawl. [O]ccasionally
> involve concentrated exposure to pulmonary irritants like dusts, fumes, odors,
> chemical irritants, poor ventilation, and humidity. Additionally due to seizure
> precautions, the [Plaintiff] must avoid all exposure to unprotected heights, cutting
> or moving and dangerous machinery, and commercial driving. After May 7, 2018[,]
> due to right eye blindness and limited depth perception, the claimant is unable to
> make accurate judg[]ments as to distance and speed. The work may demand up to
> simple, routine, and repetitive tasks.

Tr. 27–28. At step four, the ALJ determined that during the relevant period, Plaintiff was not

capable of performing her past relevant work as a general duty nurse or secondary school

teacher. Tr. 33. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age,

education, and work experience to a vocational expert ("VE"). Tr. 33–34. The VE testified that a

hypothetical individual with a similar RFC would be able to perform the following representative

occupations: marker, photocopying machine operator, and bagger. Tr. 34. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that she was not disabled. Tr. 34.

IV.   LEGAL ANALYSIS

Plaintiff advances two arguments challenging the ALJ's assessment of her RFC. First, Plaintiff contends that the ALJ failed to consider the combined effect of the loss of vision in her right eye and her reduced neck motion. ECF No. 17 at 10. Second, Plaintiff asserts that the ALJ failed to consider her asthma impairment. ECF No. 17 at 13. The Commissioner responds arguing that the ALJ properly considered Plaintiff's impairments and that the ALJ's decision was supported by substantial evidence and should therefore be affirmed. ECF No. 20 at 6, 8.

**A.  The ALJ did not err in considering Plaintiff's loss of vision and reduced neck motion.**

Plaintiff argues that the ALJ failed to consider the combined impact of Plaintiff's loss of vision and reduced neck motion in the RFC analysis. ECF No. 17 at 10. The ALJ explicitly addressed Plaintiff's reduced neck motion and right eye vision loss in the decision, albeit separately. Regarding Plaintiff's reduced neck motion, the ALJ noted that the evidence showed neck flexion deficits of 20 degrees and mild limitations at 30 to 50 degrees. Tr. 29. Other than that, however, Plaintiff's remaining range of motion in her neck was within normal expectations. Tr. 29. Thus, the ALJ concluded that Plaintiff's neck motion had limited impact in her ability to function, allowing her to retain physical functioning within the RFC. Tr. 29.

Next, the ALJ addressed Plaintiff's loss of vision in her right eye, concluding that medical evidence contradicted Plaintiff's level of severity complained of; however, the ALJ found this condition to be severe to "maximize[] the benefit of the doubt on behalf of" Plaintiff.

Tr. 30. In forming her conclusion, the ALJ cited to examining physician Dr. María G. Velázquez Lamela's ("Dr. Velázquez") eye examination where Dr. Velázquez observed that Plaintiff was able to read letters with her right eye and reported that Plaintiff's examination performance was inconsistent with her alleged condition. Tr. 30. The ALJ also cited to a Magnet Resonance Imaging ("MRI") of Plaintiff's right eye from June 2018 showing no intrinsic nerve pathology and a report from examining physician Dr. Leonor García Escanelle characterizing Plaintiff's vision as transient or temporary. Tr. 30, 433, 910. Despite the evidence above, the ALJ, as a precautionary measure, included visual limits in Plaintiff's RFC because the evidence raised questions about the severity of Plaintiff's loss of vision in her right eye. Tr. 30.

Plaintiff correctly notes that the ALJ did not explicitly address the impact of Plaintiff's reduced neck motion and loss of vision in combination. However, that does not necessarily mean that the ALJ did not consider both impairments in the RFC analysis in practice, especially where the ALJ's report refers to assessing a combination of impairments. *See Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) ("An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings."); *cf. Viveiros v. Astrue*, No. CIV 06-419T, 2009 WL 196217, *5 (D.R.I. Jan. 23, 2009) ("Given Plaintiff's numerous health complaints, it is entirely understandable that the ALJ would discuss the evidence utilizing an organizational format like the one she chose. The Court declines to infer from this format that the ALJ did not consider the effect of Plaintiff's impairments in combination."). Here, the ALJ made several references to addressing all of Plaintiff's impairments. *See e.g.*, Tr. 24 ("The [ALJ] must consider all of

[Plaintiff's] impairments, including impairments that are not severe."); *see also* Tr. 28 ("In making [the RFC] finding, the [ALJ] has considered all symptoms.").

However, even if the ALJ erred in failing to consider Plaintiff's reduced neck motion and vision loss in combination, the error would be harmless and therefore not a basis for remand because Plaintiff would still be able to perform work in the national economy. "The First Circuit has applied a 'harmless error' rule in Social Security benefit cases." *Ward v. Apfel*, No. 98-168-B, 1999 WL 1995199, at *3 (D. Me. June 2, 1999) (citing *Pérez Torres v. Sec'y of Health and Human Servs.*, 890 F.2d 1251, 1255 (1st Cir. 1989)) ("Accordingly, if the likely outcome on remand in this case is clear and the same as that reached in the decision under review, making the administrative law judge's admitted error essentially harmless, the court may uphold the denial of the plaintiff's claim.").

During the hearing, the ALJ posed a hypothetical to the VE, which effectively included the same visual limitation in Plaintiff's RFC: "[D]ue to right eye blindness and limited depth perception, the [Plaintiff] is unable to make accurate judg[]ments as to distance and speed." Tr. 27, 51. In response to this hypothetical, the VE noted that Plaintiff could work as a marker, photocopying machine operator, and a bagger, the same three occupations listed in the ALJ's report. Tr. 34, 51–52. Subsequently, Plaintiff's attorney asked the VE whether Plaintiff's reduced neck motion in tandem with the loss of vision in her right eye would affect her ability to work in any of the listed occupations. Tr. 52. The VE noted that those two impairments in combination would affect Plaintiff's field of vision, but because the occupations of marker, photocopying machine operator, and bagger did not require field of vision, Plaintiff would still be able to perform those occupations. Tr. 52. Therefore, even if the ALJ failed to assess the combined impact of both impairments and that combined impact warranted greater visual restrictions,

Plaintiff would still be able to perform in the same occupations listed in the ALJ's report.
Accordingly, the ALJ did not err in formulating Plaintiff's RFC while addressing Plaintiff's
reduced neck motion and loss of vision in her right eye.

**B. The ALJ properly considered Plaintiff's asthma in the RFC determination.**

Plaintiff asserts that the ALJ did not consider her asthma impairment. ECF No. 17 at 13.
The ALJ first addressed Plaintiff's asthma by classifying it as non-severe, noting that medical
evidence reasonably indicated that the condition was temporary or minimally limiting at most.
Tr. 25. Specifically, the ALJ relied on stress test results showing indications of clear lung fields
in 2017. Tr. 25. Additionally, the ALJ acknowledged that Plaintiff had been hospitalized in
September 2019 for respiratory distress. Tr. 25. However, the ALJ noted that the hospitalization,
in and of itself, did not make the asthma severe because providers noted that many of the triggers
resulting in the hospitalization were within Plaintiff's control such as smoking, aspirin, and
hyperactivity. Tr. 25. Moreover, the September 2019 post-hospitalization diagnosis classified
Plaintiff's asthma as mild. Tr. 25.

Beyond classifying Plaintiff's asthma as non-severe, the ALJ's report does not explicitly
use the term "asthma" again while explaining the RFC assessment. Because of this, Plaintiff
argues that the ALJ did not properly consider Plaintiff's non-severe asthma to formulate the
RFC. However, although the ALJ did not explicitly address Plaintiff's asthma in her report
beyond classifying it as non-severe, that does not necessarily mean the asthma was not
considered in the RFC analysis.

Here, the ALJ did consider Plaintiff's non-severe asthma while formulating the RFC,
albeit implicitly, by including the following limitation in Plaintiff's RFC: "occasionally involve
concentrated exposure to pulmonary irritants like dusts, fumes, odors, chemical irritants, poor

ventilation, and humidity." Tr. 27. While the ALJ does not explain why this specific limitation was included in Plaintiff's RFC, it could be reasonably inferred that it was included to account for Plaintiff's non-severe asthma. No other impairment suffered by Plaintiff would reasonably justify a limitation addressing Plaintiff's respiratory system. Moreover, Plaintiff makes no argument or cites to any evidence in the record to indicate that this limitation was not adequate to account for Plaintiff's non-severe asthma. Accordingly, the ALJ properly considered Plaintiff's non-severe asthma, and therefore this is not reversible error warranting remand.

## V.   CONCLUSION

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence and contained no error warranting remand. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of January, 2024.

s/Marcos E. López
U.S. Magistrate Judge